**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Christina Girten, on behalf of her minor child, S.G., | ) )  ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, |  |
| v. |  |
| Summit Hill School District 161, John ("Jack") P. Howard III, Daniel Pierson, and Joseph Palicki, |  |
| Defendants. |  |

Case No.

**COMPLAINT**

Plaintiff Christina Girten, on behalf of her minor child, S.G., by her attorneys, complains against Defendants Summit Hill School District 161, John ("Jack") P. Howard III, Daniel Pierson, and Joseph Palicki as follows:

Introduction

1. When S.G. was in 7th grade at Summit Hill Junior High, teacher Jack P. Howard III ("Howard") would stand inside the girls' locker room and watch S.G. and other female students dress and undress.

2. Howard, a male teacher in his forties, was able to do so because Summit Hill Junior High had tasked him with "supervising" the girls' locker room.

3. On June 19, 2020, S.G. wrote to the Summit Hill School District 161 school board, "why should an older male that we don't trust or know very well be able to come and supervise girls when they are half naked?"

1

4. Howard is still teaching and also coaching girls' sports at Summit Hill Junior High and has received no discipline for what he did to S.G. (and the other girls in the locker room).

## Jurisdiction and Venue

5. This is a civil action brought to redress sex discrimination against S.G.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

7. Plaintiff brings claims under the U.S. Constitution and Title IX of the Education Amendments of 1972, as well as related claims under state law.

8. Plaintiff invokes 28 U.S.C. § 1367 (supplemental jurisdiction) for her state law claims.

9. The events giving rise to this lawsuit occurred in this District, namely in Frankfort, Illinois.

## Parties

10. Summit Hill Junior High School (the "School" or the "Junior High") is a public school in Will County that educates approximately eight-hundred 7th and 8th grade students.

11. The Junior High is part of Summit Hill School District 161 (the "District").

12. Howard is a Physical Education and Health Teacher at the Junior High. He is being sued in his individual capacity.

13. Howard has been a teacher at the Junior High for 17 years.

14. Howard also coaches girls in basketball, volleyball, track, and golf.

15. Daniel Pierson, at all times mentioned herein, was the Junior High's Principal. He is being sued in his individual capacity.

2

16. Joseph Palicki, at all times mentioned herein, was the Junior High's Vice-Principal. He is being sued in his individual capacity.

17. S.G. started at the Junior High in the Fall of 2019 as a 7th grader. At that time, S.G. had just turned 12 years old.

Facts

18. From December 21, 2019 to March 16, 2020,[1] Howard would enter the girls' locker room on a weekly basis.

19. While in the locker room, Howard would watch the girls, including S.G., undress and dress. On information and belief, he watched them dress and undress for sexual gratification.

20. The girls' locker room had a round mirror on the ceiling, which made it easier for Howard to watch the girls undress and dress.

21. "Supervising" the locker room was one of Howard's official duties at the School.

-CAUSES OF ACTION-

**Count I: Title IX Violation (Sex Discrimination)**
*Against the District*

22. Plaintiff restates paragraphs 1-21 as if fully alleged here.

23. The District receives federal funding.

24. On information and belief, Howard watched S.G. and other girls dress and undress in the locker room for sexual gratification; he did not watch boys dress and undress in the same way (i.e., for sexual gratification).

---

[1] (when schools were closed by Gov. Pritzker's order due to COVID-19)

25. S.G. was subjected to a sexual harassment which was severe—she was forced to undress and dress while Howard watched her.

26. S.G. was subjected to sexual harassment which was pervasive—Howard did it 10-15 times over 3 months.

27. S.G. was subjected to sexual harassment which was objectively offensive—no 12-year-old girl should be required to undress at school in front of a man in his forties (and especially not in from of a man known to have previously engaged in sexual misconduct with other female students).

28. Howard's actions (and the District's failure to take appropriate corrective or preventative action) materially altered the conditions of S.G.'s education.

29. S.G. was extremely distressed by Howard's conduct and dreaded being near him both inside and outside of the locker room.

30. The District knew that Howard was in the locker room watching girls as they changed. Officials with authority to act on behalf of the District assigned Howard that duty.

31. Prior to December 21, 2019, when Howard first watched S.G. change, the District had knowledge of at least several facts (beyond the District's knowledge that Howard, a man in his forties, was tasked with "supervising" a girls' locker room) demonstrating that the risk of harm to girls at the School was so great that it would almost certainly materialize if the District did nothing about it.

    a. On November 12, 2019, the Junior High's Principal, Daniel Pierson, was made aware, via an online contact submission/email, that during Howard's Health class:

      i. A student said she thought Mr. Pufahl[2] was cute;

      ii. Howard responded, "I thought I was the hot one";

      iii. The student said, "you guys are tied"; and

      iv. Howard smiled at her.

b. On November 20, 2019, the Junior High's Principal, Daniel Pierson, as well as its Vice-Principal, Joseph Palicki, were made aware that:

      i. Howard had shared his hooded sweatshirt (his "hoodie") with female students (at the Junior High, it was well-known that sharing a hoodie meant there was a romantic relationship between two people); and

      ii. A parent of one of these students (to whom Howard had given his hoodie) thought that Howard needed to go through sexual harassment training.

c. It was well-known that Howard frequently made inappropriate comments about girls' looks (who were 12-14 years old) and "checked them out" (i.e., looked at them in a sexual way).

32. Daniel Pierson and Joseph Palicki were officials who, at a minimum, had the authority to address Howard's sexual misconduct and institute corrective measures on the District's behalf.

33. Despite the knowledge referenced above, the District, through its agents, allowed Howard to continue teaching female students.

---

[2] (a different male Physical Education and Health teacher)

34. Despite the knowledge referenced above, the District, through its agents, allowed Howard to continue supervising girls, including S.G., while they were changing in the locker room.

35. The District's failure to discipline Howard for his prior sexual misconduct caused him to believe he could do something like watch 12-year-old girls undress for the purpose of sexual gratification, with impunity.

36. The District's acts and omissions were clearly unreasonable given the knowledge it possessed.

37. The District's clearly unreasonable acts and omissions caused S.G. severe harm, including emotional distress.

38. The District's acts and omissions violated Title IX.

39. These violations were intentional, willful, and/or deliberately indifferent and warrant an award of monetary damages.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against the District and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual/pecuniary damages, compensatory damages (including for emotional distress), injunctive relief (including an order directing the District to terminate Howard), equitable relief, attorneys' fees, and costs.

### Count II: Equal Protection Violation
*Against Howard*

40. Plaintiff restates paragraphs 1-39 as if fully alleged here.

41. As more fully detailed above, Howard subjected S.G. to sexual harassment amounting to a hostile educational environment.

42. Howard was acting under color of state law when he sexually harassed S.G. The Junior High had tasked him with supervising girls in the locker room while they undressed.

43. On information and belief, Howard intended to harass these girls, including S.G., for his own sexual gratification. He did not watch boys dress and undress in the same way (i.e., for sexual gratification).

44. Howard's conduct caused S.G. severe harm, including emotional distress.

45. Howard is liable under 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Howard and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual/pecuniary damages, compensatory damages (including for emotional distress), punitive damages, attorneys' fees, and costs.

### Count III: Equal Protection Violation (*Monell* Claim)
*Against the District*

46. Plaintiff restates paragraphs 1-45 as if fully alleged here.

47. The District had an official policy allowing/authorizing male teachers, including Howard, to supervise (and thus watch) female students while they were dressing and undressing in the girls' locker room.

48. Prior to December 21, 2019, when Howard first watched S.G. change, the District had knowledge of at least several facts (besides the obviously distressing fact that Howard was a man in his forties) demonstrating that there was a great risk that allowing him to supervise female students in the girls' locker room while they changed would lead to constitutional violations.

7

    a. On November 12, 2019, the Junior High's Principal, Daniel Pierson, was made aware, via an online contact submission/email, that during Howard's Health class:

        i. A student said she thought Mr. Pufahl was cute;

        ii. Howard responded, "I thought I was the hot one";

        iii. The student said, "you guys are tied"; and

        iv. Howard smiled at her.

    b. On November 20, 2019, the Junior High's Principal, Daniel Pierson, as well as its Vice-Principal, Joseph Palicki, were made aware that:

        i. Howard had shared his hooded sweatshirt (his "hoodie") with female students (at the Junior High, it was well-known that sharing a hoodie meant there was a romantic relationship between two people); and

        ii. A parent of one of these students (to whom Howard had given his hoodie) thought that Howard needed to go through sexual harassment training.

    c. It was well-known that Howard frequently made inappropriate comments about girls' looks (who were 12-14 years old) and "checked them out" (i.e., looked at them in a sexual way).

49. Daniel Pierson and Joseph Palicki were officials who, at a minimum, had the authority to address Howard's sexual misconduct and change the problematic policy (i.e., prevent Howard from supervising female students in the girls' locker room while they were changing).

8

50. The District was deliberately indifferent to the risk that Howard would commit constitutional violations while supervising female students in the girls' locker room.

51. Despite having the knowledge referenced above, the District, through its agents, allowed Howard to continue supervising female students, including S.G., while they were changing in the girls' locker room.

52. This policy caused the deprivation of S.G.'s equal protection rights described more fully in Count II. Howard could not have watched S.G. change in the locker room had the District changed the problematic policy (*i.e.*, prevented him from supervising the girls' locker room).

53. This policy was the moving force behind Howard's constitutional violation, which is described more fully in Count II.

54. The District's failure to prevent Howard from supervising the girls' locker room, despite his prior sexual misconduct, caused him to believe he could do something like watch 12-year-old girls undress for the purpose of sexual gratification, with impunity.

55. The District's acts and omissions caused S.G. severe harm, including emotional distress.

56. The District is liable under 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against the District and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual/pecuniary damages, compensatory damages (including for emotional distress), injunctive relief (including an order directing the District to terminate Howard), equitable relief, punitive damages, attorneys' fees, and costs.

### Count IV: Equal Protection Violations
*Against Daniel Pierson and Joseph Palicki (in their individual capacities)*

57. Plaintiff restates paragraphs 1-56 as if fully alleged here.

58. Daniel Pierson ("Pierson") and Joseph Palicki ("Palicki") were Howard's supervisors.

59. Pierson and Palicki were personally involved in Howard's constitutional violation, which is detailed in Count II.

60. As explained more fully above, prior to December 21, 2019 (when Howard first watched S.G. change), Pierson and Palicki were made aware that Howard had engaged in inappropriate sexual conduct with female students.

61. Pierson and Palicki approved, condoned, and turned a blind eye to Howard's misconduct, however, by failing to discipline Howard and by continuing to allow him to "supervise" the girls' locker room while female students dressed and undressed.

62. Pierson's and Palicki's inaction constituted deliberate indifference.

63. Pierson's and Palicki's inaction caused the deprivation of S.G.'s equal protection rights described more fully in Count II. Howard could not have watched S.G. change in the locker room had Pierson and Palicki not approved, condoned, and turned a blind eye to Howard's misconduct.

64. Pierson's and Palicki's inaction caused Howard to believe he could do something like watch 12-year-old girls undress for the purpose of sexual gratification, with impunity.

65. Pierson's and Palicki's acts and omissions caused S.G. severe harm, including emotional distress.

66. Pierson and Palicki are liable under 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Pierson and Palicki and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual/pecuniary damages, compensatory damages (including for emotional distress), punitive damages, attorneys' fees, and costs.

### Count V: Illinois Civil Rights Act

67. Plaintiff restates paragraphs 1-66 as if fully alleged here.

68. The Illinois Civil Rights Act of 2003 provides that no unit of local government in Illinois shall "deny a person the benefits of, or subject a person to discrimination, under any program or activity on the grounds of that person's… gender." 740 ILCS 23/5.

69. The District's actions and inactions complained of in Count I also violated the Illinois Civil Rights Act.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against the District and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual damages (including for emotional distress), injunctive relief (including an order directing the District to terminate Howard), attorneys' fees, expert witness fees, litigation expenses, and costs.

### Count VI: Aggravated Negligence/Willful and Wanton Supervision
*Against the District*

70. Plaintiff restates paragraphs 1-69 as if fully alleged here.

71. The District had a duty to prevent its teachers, including Howard, from engaging in sexual misconduct toward students.

72. The District breached this duty when, after learning that Howard had engaged in sexual misconduct toward other female students, it 1) failed to take any disciplinary action and 2)

11

continued to allow Howard to "supervise" the girls' locker room while female students dressed and undressed.

73. The District acted willfully and wantonly, with utter indifference to or conscious disregard for S.G.'s welfare, when it allowed Howard to supervise her and other female students in the girls' locker room while they changed.

74. As a result of the District's willful and wanton breach of this duty, Howard watched S.G. and other girls dress and undress 10-15 times for the purpose of his own sexual gratification.

75. The District's breach caused S.G. severe harm, including emotional distress.

WHEREFORE plaintiff requests that judgment be entered in her favor and against defendant District and that she be awarded all remedies to which she is entitled under the law, including but not limited to actual/pecuniary damages, compensatory damages (including for emotional distress and pain and suffering), punitive damages, costs, and any equitable or injunctive relief the Court finds just and appropriate.

### COUNT VII: Indemnification
*Against the District*

76. Plaintiff restates Paragraphs 1-75 as if fully alleged here.

77. Pursuant to 745 ILCS 10/9-102, the District is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorneys' fees and costs) for which an employee, while acting within the scope of his or her employment, is liable.

78. The acts of Howard, Pierson, and Palicki described herein were committed within the scope of their employment.

79. In the event that a judgment for compensatory damages is entered against Howard, Pierson, or Palicki, the District must pay the judgment and may pay the associated attorneys' fees and costs.

WHEREFORE, Plaintiff requests that the District be ordered to pay her the full sum of any judgment against Howard, Pierson, and Palicki, except for punitive damages.

**Plaintiff demands trial by jury.**

DATE: 8/9/21                                                  /s/ Julie O. Herrera

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Phone: 312-479-3014
Fax: 708-843-5802
jherrera@julieherreralaw.com